## SUPREME COURT—IN ADMIRALTY. ·

EMILE PERRIN, CONSUL AND COMMISSIONER OF FRANCE, IN BEHALF
OF GUILLOT FRERES, OWNERS OF THE FRENCH WHALESHIP "NA-
POLEON III.," AND OTHERS, *vs.* A QUANTITY OF OIL ON BOARD
WHALESHIP "HERCULES."

It is a general rule in the Admiralty, in cases of derelict, to allow a moiety of
the property saved to the salvors.

ALLEN, C. J.

Emile Perrin, Consul and Commissioner of the Empire of
France, at the Hawaiian Islands, in behalf of Messrs. Guillot
Freres, owners of the French whaleship "Napoleon III.," lately
wrecked in the Arctic Ocean, as well as of the underwriters of
said ship, and of the officers and crew thereof, has filed his
libel in a cause civil and maritime, for possession of, and against
a quantity of oil taken from the wreck of said "Napoleon III.,"
and now on board of the whaleship "Hercules," in the harbor
of Lahaina, which is within the maritime jurisdiction of this
Kingdom.

It is alleged and admitted that the whaleship "Napoleon
III.," while cruising near St. Paul's Island, near the entrance of
the Arctic Ocean, on or about the 20th of May last, was wrecked
by collision with icebergs, and was a total loss. And it is in
evidence that Captain Athearn, master of the whaleship "Her-
cules," who was engaged in the whaling service in the same
sea, received on board his ship, on the morning of the 21st of
May, twenty-one seamen who had abandoned the wreck of the
"Napoleon III.," who gave him the information of the loss.
She was then on the edge of the ice, and lying on her side,
with the sea breaking over her, and totally abandoned. The
master of the "Hercules" was the first man on board of her.
The hatches were off and under water, and casks of oil were
afloat, and many stove. On the first day he cut a hole in her
side, and on the third day succeeded in getting some casks out.
It appears further, that the wreck was at times about one mile
in the ice, that is, surrounded by floating ice. The weather

was bad—both snowy and rainy. The time of service was from the 21st to the 31st of May, which was the last day when any oil was taken from the ship.

It appears further, that about one hundred and twenty barrels of oil were racked off into the casks of the "Hercules," and six small casks taken from the "Napoleon III.," containing about thirty barrels, are now on board the "Hercules," making in all one hundred and fifty barrels. It appeared further that there were saved some one hundred and fifty pounds of rigging, some blocks, and a davit, but of little value. After the evidence was closed, the parties agreed that the Court, in making its decision, should regard the quantity salved as one hundred and fifty barrels, and the price at this port at thirty-six cents per gallon ; amount of decree to be fixed, in cash, on said data, which the agent of the ship "Hercules" agreed to pay.

This is a clear case of derelict, and so regarded by the parties, and as the quantity of oil saved and its price at this port is agreed upon, the only duty for the Court to discharge, is the proportion which should be decreed to the libellant. The principle upon which compensation is to be paid in a case of this character is well settled, and it is a general rule in Admiralty to allow one moiety to the salvors. There are exceptions indeed, as Judge Story says, "but they are where the property saved is very inconsiderable, and the gallantry, and danger, and difficulty of the service have been so great as seemed to require an extraordinary compensation, hardly to be measured in value." (1 Story's Rep., 325 ; 5 Rob. R., 322 ; 1 Mason *vs.* Brig ———, 376 ; 4 Rob. R., 193, "L'Esperance ;" 1 Dod. R., 46 ; 1 Ibid, 414, 421 ; "Elliosa," 2 Dod., 75 ; 2 Story's Reports, 195, case of Sprague and others.)

It is not an inflexible rule, still it is regularly adhered to. It will sometimes vary when the amount of property is very large, and the perils from which the property is rescued not imminent. In this case the value of the property saved is not large, but the perils from which it was saved were imminent. The salvors conducted with great promptness, and exhibited good judgment in their labors, and although it was not pretended that there was any unusual risk to the persons of the salvors, still the labor was severe in the inclement weather of that

northern latitude. The oil has been on board the ship during her whaling cruise, which makes the freighting service to this port more than in ordinary cases. In view of all the circumstances, I regard this case as coming within the general rule, and therefore decree one moiety of the gross amount of oil, which is seventy-five barrels, to the libellant, and for and in consideration that said oil is to be retained by the salvors, at the price at this port, as agreed upon by the parties, the salvors shall pay to the libellant the sum of eight hundred and fifty dollars and fifty cents ($850 50), but the costs of Court to be paid by libellant.

November, 1858.